Turn to the next case on our calendar, United States v. Shaka Stamen. Would you give this to Lillian? Thanks. May it please the Court. Appellant is here because the District Court committed violations of law in its denial of the Rule 35 motion brought by the government. We seek to vacate and remand to a different District Court judge. The violations of law consisted of abuse of discretion in its relying on facts that are not supported by the record, material facts that it relied on that really were almost as if they made them up or misread the record. In addition, the method that they used in denying the Rule 35 motion, conflicted with the two-stage inquiry that the Honorable Judge Chen had decided in United States v. Parks, is the procedure to use. I'd like to first focus on the facts of this case, which are not really in dispute. The government argues that because the complaints are about facts, we don't have jurisdiction. I believe that's wrong, Your Honor, because when there is an abuse of discretion in finding those facts, I mean, it's the court principle. You cannot deny anything, any court decision on anything, on arbitrary decisions. And that's what happened here. What happened here, when you look at the facts that are uncontested and the court's decision, they don't meld. There's something else, as if he was thinking of another case. So let's talk. He was arrested in April of 2012 in Georgia, where he lived, on an Eastern District of New York case. This is the only decision, the only issue that's before the court on a Rule 35, is whether or not the defendant gave substantial assistance to the government. Isn't that the only question before the court? And then if the answer is either yes or no, then the next question is, should there be a sentence reduction? Yes, that's a two-step process, but it's not the only question. We start with that. And here, what happened was, the court never decided that. So it conflated the 3553A factors. It's not clear on the record that the district court said, I can reduce this sentence. That's an acknowledgment of, for example, U.S. v. SCARPA, which made very clear that the first thing that must occur for any, to be a Rule 35, is the government must make the motion. And that's what the court was saying. And yes, we could not be before the court at all. The district court satisfied the first step. No, the first step, excuse me, Your Honor, I would disagree. The first step in the analysis is whether the defendant substantially assisted. And to that, the district court must look at what we're accustomed to, was five . . . If the answer to the first question is no, then there's no ability to reduce a sentence. And here, the district judge said, yes, I have the ability. So implicitly, at least, he answered the first question, yes. He answered the question that he had the authority, because the Rule 35 motion was filed. But he did not answer the question, which is, not whether I have the authority, but whether in fact substantial assistance occurred. And even in that, discretion is not infreded. I mean, it's not limitless. And the clear here that there was substantial assistance . . . Also, didn't he rely on erroneous facts in this sentencing? Didn't he say Judge Gleeson had all this in front of him, when that's simply not true?  What is that? That is, relying on erroneous facts is an abuse of discretion, or what? When you rely on erroneous facts, that's a violation of the law. It's an abuse of discretion. Yes, that puts us right where we are. And what he did, therefore, was conflate it. He not only misstated some of the underlying facts and ignored many material facts, which again, when you're looking at a whole record, you need to look at everything, such as all the substantial assistance from day one that appellant did, which was, for example, when the district court, in his opinion, said that he did not consider . . . that he, for example, from the initial point, didn't cooperate and didn't cooperate against the Western District of North Carolina, which was the companion . . . the Rule 20 case that came from the Western District of North Carolina, where the cooperation occurred. That's just not correct. From day one, and it's uncontested, that when he was arrested, he gave up his telephone, he looked at photographs, he named names, and that information was immediately communicated to the Western District of North Carolina . . . They wound up sending six people to jail on his evidence, didn't they? Absolutely. And in fact, prior to sentencing, he testified before the grand jury. And there was a letter written, that's what Judge Gleeson had before him, by the Western District of North Carolina, by the Eastern District of New York prosecutors, saying, look . . . And you don't disagree, do you, that if all of those facts were before the district court and the court recognized all of those facts, and if the district court then did not reduce the sentence, no appeal would lie. Isn't that true? Well, Your Honor, I'm not sure about that. I'm going to tell you why. First of all, Judge Johnson said no. For example, he said, well, everything was before the court and no 5K1.1 motion was made. Well, of course it wasn't made. We didn't have a cooperation agreement. And in fact, the letters before the district court from the prosecutors, as well as myself, said, look, this investigation is continuing in the Western District of North Carolina. Judge Gleeson anticipated that Rule 35, as well as the prosecutors in the Eastern District of New York, and said so in their letter to the court. Judge Gleeson didn't know the extent of this person's cooperation when he sentenced him and was anticipating, as you say, a Rule 35 motion. He couldn't have, because it took another three years. He cooperated for five years. All he knew was that the initial cooperation agreement with the Eastern District of New York was breached by committing another crime. No. Your Honor, that's not exactly accurate. In fact, he didn't have a cooperation agreement. He had begun to cooperate. He had begun to proffer. We're all familiar with that process. And so three weeks, that's all, three weeks he was out on bond. Thereafter, the Eastern District of New York said, we're not going to cooperate you. And the prosecutor said in his sentencing memo, there were two factors. The fact that he committed during that small three week window, continued crimes, I don't downplay it. The Eastern District of New York did not offer him a cooperation agreement. But in addition, their investigation into the crime they were investigating, wanted to prosecute, in fact, was taken up by the ADA in Brooklyn. Let me make clear one thing before you leave the podium. Isn't it true that the sentencing judge said all this was before Judge Gleeson and that it couldn't have been because Judge Gleeson left the court before the cooperation took place? Yes, that is accurate. Thank you. Thank you. Now we'll hear from the government. May it please the court. Good morning. Good morning, Assistant United States Attorney Kayla Bensing for the government. Ms. Newman has discussed at length certain- This is your motion, right? This was your motion originally. That's correct, Your Honor. Why are you fighting it so hard? I don't understand. Well, Your Honor- It's your motion. Yes, Your Honor. But the court does have an obligation to consider jurisdiction. And here, where the appeal is simply challenging the discretionary nature of what a district judge has to do in a Rule 35 proceeding, there is no jurisdiction for this court- But the challenge is based on wrong facts. What if a Judge Johnson had confused this defendant with someone who was a mass murderer and sentenced him based on that? Would we not have jurisdiction to look at that? I think that there is some sort of baseline- Would we not have jurisdiction to look at it if it was just wrong? I do think that there is some sort of baseline, complete disregard for the facts that might give this court jurisdiction. If a sentence is imposed based on an incorrect understanding of the facts, is that sentence not in violation of law? I think that it might be. But here, there is no sort of very erroneous factual findings that would even constitute- When he couldn't have been because he left the court before this cooperation took place. Isn't that correct? Your Honor, the only- Is that correct? Could you just answer that question? I don't think it's exactly correct, and I will answer it. So, what was before Judge Gleeson was almost everything except what had happened to those defendants in the criminal case. Except his testifying before the grand jury. That hadn't taken place yet. Your Honor, I would have to double check that, but I believe that Judge Gleeson knew of the extent of- He knew he was cooperating, but he didn't know about the fruits of the cooperation. Isn't that correct? He didn't know that six people would be convicted? That's correct. He did not have that piece before him. And I'll note that if you take a look at Judge Johnson's opinion, he does note that the government's moving papers has acknowledged that Judge Gleeson was aware of all of these facts at the sentencing stage. And then he goes on to address that extra piece, those six people who were indicted and convicted in North Carolina. So even though he says, initially, that Judge Gleeson had most of these facts before him, he then does go on to address the fact that Judge Gleeson didn't have before him, which was the extent of the fruits of cooperation. My apprehension is that all the facts on the North Carolina cooperation were before Judge Gleeson when Judge Gleeson sentenced this defendant. That's just wrong. Well, again, I'm not sure that it's wrong because he then goes on to acknowledge the fact that it wasn't before Judge Gleeson. So I think a fair reading of Judge Johnson's order is that Judge Gleeson had almost everything before him. Even Judge Gleeson found that his- Cooperate both in the EDNY and in North Carolina, right? That's correct. Just in a letter from Ms. Newman to Judge Gleeson. That's correct. And so the only piece that wasn't before Judge Gleeson was what happened. And here- Did Judge Johnson acknowledge that Judge Gleeson could not have known about the final results? I'm not sure if he specifically wrote that in his opinion. But he did acknowledge that he was not impressed with the fact of what happened in North Carolina, given the whole history of cooperation in this case, which is that he only gave up. And there's this finding that he only gave up the six North Carolina defendants after committing these additional crimes and getting caught doing so. And I just want to make it clear for the record that the exact timing of when the six specific North Carolina defendants were given up is not in the record. And a district judge has discretion under Rule 35 to consider various factors, but I don't think it can be expected to consider factors that weren't even put forth to it. Isn't it true that that happened after Judge Gleeson left the bench? I do, it is true that the fruits of the cooperation here in terms of what happened in North Carolina to those six defendants couldn't have been before Judge Gleeson. Right, because he wasn't there. That's correct. When Judge Johnson said all this was before Judge Gleeson, he was in error when he said that. Isn't that correct? I still don't think that that's true. You just said it happened after he left. If you look at- Was it only an error in part? I'm not even sure it was an error in part, because Judge Johnson is actually quoting- Are we talking about at 210, where- At 210, he says, in the government's moving papers, it is acknowledged. And then he quotes that Judge Gleeson was aware of all of these facts at the sentencing stage. And certainly- The question is, what is all of these facts? What does that refer to? Correct, and defense counsel had an opportunity, given that this was in the moving papers, to address that statement with the district court. And I think it was clear to everybody that all of these facts referred to all of the facts that occurred when Judge Gleeson was presiding over this case. Couldn't have referred to facts that hadn't happened yet. Of course, of course, Your Honor. Johnson would have known that. Exactly, Your Honor. And I think it's significant that he then does address that extra piece, which is the six defendants in North Carolina. That's in the order. And that's in the order. That comes immediately after the statement about what was before Judge Gleeson. So again, I think that nobody disputes here that the source of jurisdiction is 3742. And that given that there is no, I don't think that there are any- What is the government's, the standard that you are espousing? That only if it's an egregious error of fact do we have jurisdiction? But if it's a minor error of fact, we don't? Is that the position? I think that the line that can be drawn from this court's cases on section 3742 appeals is that, and this is from Campo, the Second Circuit's decision in Campo. Our task is not to question the merits of a court's discretionary judgment about the propriety of a departure, but simply to ensure that the court actually makes the discretionary judgment that the law allows and expects it to make. So if the district judge referenced facts that were completely untethered- What if he referred to a different defendant that just confused the defendant he was sentencing? Would that give us jurisdiction? I'm not sure. I think it would depend on whether the district judge substantively misunderstood the case before him. And I think there, there could be a lack of discretion. What if Judge Johnson was in fact mistaken as to what was before Judge Gleeson? That he thought Judge Gleeson had facts X, Y, and Z, and that was wrong. Would we not have jurisdiction to hear that? And that was important to Judge Johnson. I think that that's not this case. Would we have jurisdiction to hear that case? That's what I'm trying to figure out what the government's position is. I'm not sure that that would evidence such a lack of understanding that the district judge would not there be still exercising his or her discretion. So I do think that there is a set of facts that if he thought that the mass murder had happened, but this case is not about that. It's just a personal identity theft case. The line you suggest is hard to draw, because we have to look at the merits in order to draw that line. And you're saying we don't even have jurisdiction to look at it, so that's difficult. I think it's sort of the same line that this court always has to draw from appeals of rule 35 motions, which can often be difficult. And that's why in some cases, this court has held that a defendant's not even entitled to any statement of reasons. Whereas in other cases, this court has held that there was a certain lack of process that entitled the defendant to an appeal. And so- If the defendant is merely arguing, I don't like the sentence. The sentence is too high. That's probably not a violation of law. But if there is an alleged error of fact, and the argument is the sentence is imposed based on factual misunderstandings, it seems to me that would be, at least arguably, a violation of law. And we would have jurisdiction to decide whether that was correct or not. What's left of this sentence, anyway? There is still some time left. The defendant is currently on supervised release and serving his term of supervised release. He's out of prison, right? So there's time left on supervised release. Wasn't he also wrong, the district judge, when he said that Stamen intended on continuing his fraudulent contract when he began cooperating with the Western District of North Carolina? There's no evidence in the record that that's correct. Isn't that true? Well, I think that the statement was a little bit more specific, in that the district judge found that- That he had a lifetime of fraud, right. But there's no evidence that he continued any fraudulent behavior after he began cooperating with the Western District of North Carolina. Well, that's true, but of course, at that point, the defendant was incarcerated, and so it would have been quite difficult for him. He wasn't incarcerated when he went down to North Carolina, was he? And besides, he committed some of these frauds while he was incarcerated, so that's not the distinction. He was incarcerated when he went to North Carolina, Your Honor. He was incarcerated during the entire period of his cooperation. And he committed some of the fraud when he was incarcerated, didn't he? He was initially released on bail in the Eastern District. And during that short period when he was released, the district judge notes 15 days after, while he was out. That's when he returned to his fraudulent conduct. In fact, the same scheme. So I do think it's a very fair inference from the record that he came to the table with unclean hands and sort of all of the other things that Judge Johnson stated in his opinion. All right, thank you very much. Thank you. We reserve two minutes for rebuttal, counsel. Two minutes. I wanted you to have a minute. Yes, thank you very much. I think there's some issues I would like to address. And that is the fact that Judge Johnson says that he comes to the table with unclean hands. Anybody who's been practicing law in the district court knows you don't get to cooperate unless you're an offender. And so therefore, in the sense you've committed a crime, a crime in which you can give information. So I think it just doesn't make sense. And that's why it's a misstatement, it's just not reality. And the fact that he came to the table with unclean hands is the fact that, of course, he was an offender. And it wasn't without intermission. In fact, the Eastern District of New York is very specific in the complaint in which he pled guilty. And it was not, while he was out for three weeks, it was like for a week period that this offense. And it didn't have to do with the Western District of North Carolina, which he's always been held to be very truthful, exceedingly helpful in their prosecution. In which they say specifically, without appellant, they could not have gotten the inside person of the scheme there that, of course, was so vital. So it makes no sense, it's offending to say that- But it is true that he was seeking to cooperate in the Eastern District of New York as well, isn't that correct? When he first got out, yes, that is true. And the- And while he was doing that, seeking to cooperate with the Eastern District of New York, he was still committing crimes, wasn't he?  And- Might lead to the conclusion that a cooperator, or an alleged cooperator, or a declared cooperator may have some unclean hands at some point during his attempted cooperations, plural. Yes, but not as to the Western District of North Carolina. That's the distinction I would like to make, because he began to cooperate with that immediately. And there was never anything that he said was not truthful. And the Eastern District of New York did not give him a cooperation for that reason. But in addition, he was severely punished. Some of the things he told the Eastern District of New York were truthful too, right? Much of what he said. And there was a decision made that New York State would carry the prosecution that they had begun. I must say that in my experience, people sometimes cooperators don't tell the truth for the first time. And yet, and commit crimes, and yet, I've seen them on the stand, or I've been their attorney, and cooperation continues. But what I would like to point is the policy statement here. When you have an appellate like we have here, whose rehabilitation, and 21 college credits while he's incarcerated, five years of cooperation. Letters, and letters, and letters to the court, speaking. And what would be the relief sought? Just the determination of supervised relief. Yes, he has two years left. He was put on supervised and released in July of 2018. So we would be asking for the two years, and we ask that it be sent back to a different district court judge. Thank you. Thank you both.